# EXHIBIT A

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
6/18/2021 8:57:45 AM
Filing ID 13028802

1  Greg Coulter (State Bar No. 016890)
   Alejandro Pérez (State Bar No. 030968)
2  **JACKSON LEWIS P.C.**
3  2111 East Highland Avenue, Suite B-250
   Phoenix, AZ 85016
4  Telephone: (602) 714-7044
5  Facsimile: (602) 714-7045
   Greg.Coulter@jacksonlewis.com
6  Alejandro.Perez@jacksonlewis.com

7
   Jeffrey A. Schwartz (*pro hac to be filed*)
8  **JACKSON LEWIS P.C.**
9  171 17th Street, NW
   Suite 1200
10 Atlanta, GA 30363
   Telephone: (404) 525-8200
11 Facsimile: (602) 714-7045
12 Jeffrey.Schwartz@jacksonlewis.com

13
   Audrey Olson Gardner (*pro hac to be filed*)
14 **JACKSON LEWIS P.C.**
   150 North Michigan Avenue
15 Chicago, IL 60601
   Telephone: (312)787-4949
16 Facsimile: (602) 714-7045
17 Audrey.Gardner@jacksonlewis.com

18 *Attorneys for Plaintiff*

19                SUPERIOR COURT OF ARIZONA

20                   IN MARICOPA COUNTY

21

22 | Mason Stephens,                      | Case No. CV2021-009842
23 |              Plaintiff,              |
24 | vs.                                  | **COMPLAINT FOR
                                            DECLARATORY RELIEF
25 | Serta Simmons Bedding, LLC,          | AND TO STAY
                                            ARBITRATION**
26 |              Defendant.              |
27

28

Plaintiff Mason Stephens for his Complaint for Declaratory Relief and to Stay Arbitration against Defendant alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Mason Stephens ("Plaintiff" or "Stephens") is a resident of Maricopa County, Arizona

2.     Defendant Serta Simmons Bedding, LLC ("Defendant" or "SSB") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia.

3.     SSB has caused, and continues to cause, certain acts and events to occur in Arizona out of which the allegations set forth in this Complaint arise.

4.     This Court has personal jurisdiction over the parties and subject matter jurisdiction over this dispute.  Venue in Maricopa County is proper.

## FACTUAL BACKGROUND

**A. Stephens Signs the Agreement in Connection with His Position as SSB's District Sales Manager.**

5.     Stephens first commenced working for Simmons Bedding Company ("Simmons") in 2004 as an Account Coordinator.  (Declaration of Mason Stephens "Stephens Decl.") at ¶ 2).

6.     He did not sign a non-compete agreement in connection with that role.  (*Id.*)

7.     In approximately October 2015, after Simmons merged with Serta to become SSB, SSB offered Stephens a position as a District Sales Manager and presented him with a Confidentiality, Non-Competition, and Non-Solicitation Agreement to execute in connection with that position.  (*Id.* at ¶ 3).  A copy of the Agreement is attached to the accompanying Declaration of Mason Stephens as Exhibit C.

8.     The language of the Agreement clearly states that it solely applied to Stephens's role as District Sales Manager.  For example, the Agreement's consideration was not continued employment with the SSB generally, but rather Stephens's acceptance of the specific "position of District Sales Manager" and the "future wages and employment

benefits, payment of which during the period of your employment is a condition of this Agreement." (Agreement, Ex. C, ¶ 1).

9.     Additionally, the Agreement expressly incorporated Stephens's job title as District Sales Manager (*Id.* at ¶ 2(a)(3)) and stated it was "due to [that] position," that Stephens could potentially harm the Company.  (*Id.* at ¶ 2(d)).

10.    The Agreement's non-competition provision was also specific to Stephens's position as District Sales Manager.  It provided:

> You covenant and agree that, during the term of your employment with the Company and for a period of twelve (12) months after the termination thereof, regardless of the reason for the employment termination, you will not, directly or indirectly, anywhere in the Territory, on behalf of any Competitive Business **perform the same or substantially similar Job Duties.** (*Id.* at ¶ 2(h) (emphasis added)).

11.    "Job Duties" is specifically defined by the Agreement to refer solely to Stephens's responsibilities as a District Sales Manager.  (*Id.* at ¶ 2(a)(3); Ex. B).

12.    Similarly, the Agreement's Non-Solicitation of Employees clause also referenced Stephens's Job Duties as a District Sales Manager:

> You also covenant and agree at during the term of your employment the Company and for twelve (12) months after the termination thereof, regardless of the reason for the employment termination you will not...solicit...any non-clerical employee of the Company with whom you had personal contact or supervised **while performing your Job Duties**, to terminate their employment relationship with the Company.  (*Id.* at ¶2(j) (emphasis added)).

13.    The Agreement further contained a Non-Solicitation of Customers,

Customer Prospects, and Vendors provision prohibiting Stephens from soliciting SSB's customers for twelve months following the termination of his employment. (*Id.* at ¶ 2(i)).

14. Finally, the Agreement included an arbitration clause whereby the parties agreed that "any controversy or claim…between the Company and [Stephens] involving the construction or application…of the Agreement…must be submitted to arbitration[.]" (*Id.* at ¶ 1). The Agreement specified that the arbitration clause was an "integral part of th[e] Agreement" and that "[t]his Agreement, which includes Exhibits A [the arbitration clause] and B [the District Sales Manager job description] represents the entire understanding between the Company and [Stephens]." (*Id.* at ¶¶ 4, 7).

15. Stephens signed the Agreement on November 8, 2015 and commenced his position as SSB's District Sales Manager position effective January 1, 2016. (Stephens Dec. at ¶ 3).

16. As a District Sales Manager, Stephens supervised a team of sales employees who managed SSB's relationships with smaller "mom and pop" retailers in Colorado and Arizona, as well as parts of New Mexico, Wyoming, South Dakota, Kansas and Nebraska. (*Id.* at ¶ 4).

17. Stephens did not supervise relationships or work with retailers in Texas, Oklahoma, Montana, or Wyoming as a District Sales Manager. (*Id.* at ¶ 4.) Nevertheless, the Agreement included these states in the defined territory subject to the restrictive covenants.

18. In approximately March 2019, Stephens was promoted to SSB's Director of Strategic Accounts (West). (*Id.* at ¶ 5).

19. In approximately October 2019, Stephens became SSB's Senior Director of Strategic Accounts (West) (*Id.*)

20. Stephens did not execute new noncompete or arbitration agreements in connection with either of these positions. (*Id.* at ¶¶ 5-6)

4

**B. Stephens Resigns from His Employment with SSB on February 28, 2020.**

21.     On Friday, February 14, 2020, Stephens informed his supervisor, Scott Moore, Vice President of Sales (West), that he was resigning from SSB and accepting a position with another company, Flexsteel Industries, Inc. ("Flexsteel"). (*Id.* at ¶ 8).

22.     At that time, Flexsteel had extended Stephens an offer of employment as its Regional Sales Manager, which Stephens accepted on February 11, 2020. (*Id.* at ¶ 7).

23.     Shortly thereafter, Stephens received a phone call from Mitch Willingham, SSB's Senior Vice President of Sales, during which Mr. Willingham inquired as to the reasons why Stephens was leaving SSB's employ and asked if there was anything the Company could do to entice him to stay. (*Id.* at ¶ 9).

24.     Stephens confirmed to Mr. Willingham that he was in fact leaving SSB and his last day was February 28, 2020, but he would consider any offers that Mr. Willingham and the Company wanted to relay. (*Id.*)

25.     On or about February 17 or 18, 2020, Mr. Willingham telephoned Stephens and suggested there might be a way to bring him "back" into an elevated role within the Company. (*Id.* at ¶ 10). In response, Stephens again confirmed that he would consider additional offers of employment from the Company, but his last day was still February 28, 2020. (*Id.*).

26.     On February 17, 2020 Mr. Moore texted Stephens and stated, "please communicate with the SAM's you['re] leaving. I'm going to be reaching out, requesting updates and reviewing strategies this week. Don't want it to be awkward. Thanks!" (*Id.* at ¶ 11).

27.     On Monday, February 17, 2020, Mr. Moore emailed Christy Miller, Vice President Human Resources, acknowledging, "Unfortunately, Mason has tendered his resignation with SSB. His last day with the company is 2/28/2020. Mason is exiting the mattress industry, going into the furniture industry. How quickly do you believe we can get the Director of Strategic Accounts West posted?" (*Id.* at ¶ 12, Ex. D). Ms. Miller

confirmed that she would post Stephens's position immediately, stating "Ah – sorry to hear that.  Can you look at this role description—any changes?  What city or cities do you want it posted for?  I'll work to get this posted today[.]"  (*Id.*).  The following day, Ms. Miller confirmed that SSB was "reach[ing] out to a headhunter for a retained search for this to help expedite [filling Stephens' position]" and was also "post[ing] the role internally so that internal folks [could] apply[.]"  (*Id.*)

28.    Stephens's decision to resign from his employment with SSB was communicated and well understood throughout the Company.  Numerous employees reached out to Stephens to wish him well in his future endeavors. (*Id.* at ¶ 13).  For example:

- On February 18, 2020, Matt Jones, former SSB employee, texted Stephens stating "Just heard, congrats on the new gig.  That company [Flexsteel] is changing, you'll do well[.]"  (*Id.* at ¶ 13, Ex. G).

- On February 20, 2020, Kimberly Kent, Senior Strategic Account Manager, emailed Stephens stating "I just wanted to say it was really nice working with you, I wish you the BEST of luck in this new chapter!"  (*Id.* at ¶ 13, Ex. H).

- On February 21, 2020, SSB employee Nicholas Lucarell texted Stephens asking "Do [customer contacts] Nick/Larry know about your departure?"  (*Id.* at ¶ 13, Ex. I).

- On February 24, 2020, SSB employee Jeffrey Herman texted Stephens stating, "I'm really happy for you…you did great things here, I value our friendship and wish you the best!!"  Stephens responded accordingly, "Thanks man! Means a lot to me.  I place a ton of value in our friendship as well.  We will stay in contact." (*Id.* at ¶ 13, Ex. I)

- Doug Applegate, Sales Representative, texted Stephens on February 28, 2020, stating "Hey – last day – pleasure working with you – will miss ya[.]"  (*Id.* at ¶ 13, Ex. J).

29.     On Friday, February 28th, Stephens finished his last day of employment with SSB. (*Id.* at ¶ 14).

30.     At the end of the day, Mr. Willingham called Stephens and apologized for not being able to arrange a new position for him before his departure and acknowledged that it was Stephens's last day with the Company. (*Id.* at ¶ 15).  However, in an effort to entice Stephens to become re-employed, Mr. Willingham once again asked Stephens if he would entertain an offer for another position within the Company.  Stephens again affirmed it was his last day with the Company but he would consider an offer of re-employment moving forward. (*Id.*)

**C. SSB Offers Stephens Employment as SSB's Vice President of Sales.**

31.     On Monday, March 2, 2020, Mr. Willingham called Stephens and, while acknowledging that Stephens had left SSB's employ, stated that he was able to offer Stephens a position as SSB's Vice President of Sales. (*Id.* at ¶ 16).

32.     In response, Stephens asked Mr. Willingham to place the offer in writing for his review and consideration. (*Id.*).

33.     Later that same day, Ms. Miller emailed Stephens an offer letter for a position as SSB's Vice President, R&I – West Region ("Vice President of Sales") and a retention bonus agreement. (*Id.* at ¶ 17, Ex. K).  The offer letter expressly stated that this "new assignment" was expected to begin on March 2, 2020. (*Id.*)  It also stated "this job offer is contingent upon your agreement to covenants required for your position which you will receive in due course." (*Id.*)  Notably, this statement confirms by its reference to "your position" that a new non-compete would be required.

34.     The following day, Stephens signed the offer letter and commenced employment with SSB once again. (*Id.* at ¶ 18).   Numerous employees reached out to Stephens to "welcome him back" after his break in employment. (*Id.* at ¶ 19).  For example, Larry Lamar, former Serta employee, texted Stephens on March 3, 2020 stating "Dude, hanging with Mike and Ryan and just found out you left SSB??? Man SSB is going to miss

you! I will too…"  Stephens responded, "Hey Larry, I did leave SSB but they just hired me back to be the VP of Sales in the west."  (*Id.* at ¶ 19, Ex. L).

### D. SSB Admits That Stephens Does Not Have a Valid Noncompete in Effect.

35.    After working for SSB as the Vice President of Sales for over a year, on April 9, 2021, Stephens received an email from Amy Doronio, SSB's Senior Litigation Paralegal, stating, "Mason, we are auditing our files and do not have a [noncompete] agreement for your current position." (*Id.* at ¶ 20, Ex. M).  Ms. Doronio accordingly sent Stephens a noncompete agreement for his review and signature, stating, "Please see our standard agreement for your position with SSB.  Sign and initial where applicable.  Please note that some pages may require more than one initial or require you to sign and initial.  Please let me know if you have any questions." (*Id.*)  Stephens did not respond at that time. (*Id.* at ¶ 20).

36.    A month later, on May 5, 2021, Stephens received a reminder to sign the outstanding noncompete agreement in connection with his Vice President of Sales position (*Id.* at ¶ 21).

37.    A few days later, on May 8, 2021, Stephens responded to Ms. Doronio and informed her that he would not be signing the noncompete agreement as requested, stating:

> I have thought about your request to sign the non-compete you presented for my new role and it doesn't feel right to me that this is now being presented to me a year after returning to the company for my new VP role.  This was never presented to me when the job was offered as a condition for consideration to return to SSB for the role of VP of Sales.  I will <u>NOT</u> be signing the non-compete that you have presented.  (*Id.* at ¶ 21, Ex. N).

38.    In reliance on SSB's direct representation that he did <u>not</u> have a noncompete agreement in effect, Stephens interviewed for a position with Purple Innovation, LLC ("Purple") and accepted a position as Purple's Vice President of Sales in May 2021.  (*Id.*

at ¶ 22).

39.     On May 14, 2021, Stephens informed Mr. Willingham that he was resigning from his position with SSB effective May 28, 2021 and going to work for a competitor. (*Id.* at ¶ 23).

40.     After learning this information, SSB informed Stephens that he would not be permitted to stay until the 28th and should cease his work immediately, consistent with SSB's standard protocols when employees leave to go to competitors.  (*Id.*)

41.     Almost a week later, on May 20, 2021, Ms. Miller emailed Stephens confirming his last day of employment and sending him a document explaining his benefits upon separation.  (*Id.* at ¶ 24, Ex. O).

42.     Between May 15, 20201 and May 26, 2021, Stephens received approximately three phone calls from SSB's Chief Commercial Officer, Melanie Huet, inquiring about Stephens' new employment.  (*Id.* at ¶ 25).  During these phone calls, Stephens disclosed that he had accepted employment with Purple.  (*Id.*)

43.     Subsequently, on May 21, 2021, SSB sent Stephens a letter threatening that he was still subject to the 2015 Agreement and demanding that he confirm his intent not to engage in any conduct which may violate the Agreement.  (*Id.* at ¶ 26, Ex. P).

44.     At the same time, in a phone call between Stephens with Ms. Huet, Ms. Huet acknowledged that there were "some grey areas" in the noncompete and it arguably may not be enforceable.  (*Id.* at ¶ 27).  Ms. Huet also informed Stephens "we [SSB] can't continue to lose more people, and we [SSB] especially can't continue to lose more people to Purple, so we [SSB] are going to make an example of you and pursue your noncompete."  (*Id.*)

45.     On June 3, 2021, SSB filed a demand for arbitration and motion for temporary restraining order with the American Arbitration Association ("AAA") (AAA Case No. 01-21-0004-1465), in which SSB argues that Stephens was in violation of the Agreement through his new employment with Purple. *See* Exhibit Q.

46.     Notably, SSB's arbitration demand and motion fail to mention Stephens' break in employment between February 28, 2020 and March 2, 2020, or SSB's April 2021 admission that after conducting an audit, SSB had concluded that it did not have a noncompete on file binding Stephens in connection with his Vice President of Sales position.

**COUNT ONE**
**(Declaratory Relief – Enforceability of the Arbitration Clause in the Agreement)**

47.     Stephens restates, realleges, and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth below.

48.     A controversy has arisen between Stephens and SSB as to their respective rights under the Agreement.

49.     Defendant SSB has taken the position that Stephens is bound by the arbitration agreement attached as Exhibit A to the Agreement.

50.     Stephens' position is that the arbitration agreement is unenforceable and does not extend to Stephens' second period of employment with SSB commencing on March 3, 2020.  The arbitration agreement contained in the Agreement does not express any intent to survive the termination of Stephens' employment.   As fully set forth above, the arbitration clause was inextricably tied to Stephens' position as District Sales Manager. The arbitration clause ceased to exist the moment Stephens left his position with SSB as District Sales Manager.

51.     When Stephens returned to SSB's employ, SSB did not direct him to sign an arbitration agreement, and he in fact signed no arbitration agreement.

52.     Should SSB enforce the arbitration agreement, Stephens stands to suffer tremendous loss for which there is no adequate remedy at law.

53.     Therefore, Stephens requests this Court to enter a Declaration, under the Uniform Declaratory Judgment Act, A.R.S. § 12-1831, *et seq.,* that the arbitration clause in

the Agreement is unenforceable as a matter of law and the arbitration currently pending before the AAA may not proceed.

## COUNT TWO

**(Declaratory Relief – Enforceability of Restrictive Covenants in the Agreement)**

54.     Stephens restates, realleges, and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth here.

55.     A controversy has arisen between Stephens and SSB as to their respective rights under the Agreement.

56.     Defendant SSB has taken the position that Stephens is currently bound by the non-competition provision in paragraph 2(h) and the non-solicitation provisions in paragraphs 2(i)-(j) of the Agreement

57.     Stephens' position is that these restrictive covenants are unenforceable as a matter of law.  In any event, the restrictive covenants in the Agreement began running on February 28, 2020 and expired by their terms on February 28, 2021.  As a result, Stephens is not currently bound by these restrictive covenants and did not violate them by accepting employment with Purple in May 2021.  As fully set forth above, the restrictive covenants were inextricably tied to Stephens' position as District Sales Manager.

58.     The restrictive covenants contained in the 2015 Agreement does not express any intent to survive past twelve months after the termination of Stephens' employment as SSB's District Sales Manager. As a result, the restrictive covenants ceased to exist the moment Stephens left his position with SSB as District Sales Manager.

59.     When Stephens returned to SSB's employ, Stephens did not sign any new restrictive covenants.

60.     Should SSB enforce the restrictive covenants, Stephens stands to suffer tremendous loss for which there is no adequate remedy at law.

61.     Therefore, Stephens requests this Court to enter a Declaration, under the Uniform Declaratory Judgment Act, A.R.S. § 12-1831, *et seq.,* that the arbitration clause in the Agreement is unreasonable and unenforceable as a matter of law and his continued employment with Purple is not a violation of any contractual agreement between Stephens and SSB.

## COUNT THREE

### (Application to Stay or Enjoin Arbitration)

62.     Stephens restates, realleges, and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth here.

63.     A.R.S. § 12-1502.B provides the Court with a mechanism to stay arbitration proceedings "on a showing that there is no agreement to arbitrate."

64.     For the reasons discussed in Count One of this Complaint, Stephens is not subject to the provisions of the Agreement, which includes the arbitration clause.

65.     As such, Stephens requests the Court stay or enjoin the arbitration proceedings in AAA Case No: 01-21-0004-1465.

66.     Stephens is likely to succeed on the merits of his claims.

67.     Stephens will suffer irreparable harm in the event the Arbitration moves forward, for which monetary damages would provide an insufficient remedy.

68.     Thus, Stephens is entitled to a stay of the Arbitration, or in the alternative, injunctive relief permanently enjoining the arbitration proceeding.

69.     In the event a trial is necessary, Stephens requests a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

Based on the foregoing, Stephens requests the following relief:

A.     For a declaratory judgment that Stephens is not bound by the arbitration clause in the Agreement;

B.     For a declaratory judgment that the restrictive covenants in the Agreement are unreasonable and unenforceable;

C.     For a declaratory judgment that the non-competition covenant in paragraph 2(h) and the non-solicitation covenants in paragraphs 2(i)-(j) of the Agreement have expired;

D.     For an order (1) staying the arbitration proceeding AAA Case No. 01-21-0004-1465, and any other current or future arbitration proceeding arising out of the Agreement or Stephens/ employment with SSB pursuant to A.R.S. § 12-1502 and on any other statutory or common law grounds under the laws of the United States and the state of Arizona, or (2) in the alternative, for a preliminary and permanent injunction barring SSB and its attorneys, officers, agents, affiliates, directors, members, managers, subsidiaries, servants, employees, and any and all other persons acting in concert or participating with SSB, from instituting or maintaining any such arbitration proceeding, on any and all claims arising out of the Agreement or Stephens' employment with SSB.

E.     For costs and attorneys' fees incurred by Plaintiffs pursuant to A.R.S. § 12-341.01 for matters arising out of contract, and any other applicable statutory or common law grounds under the laws of the United States and the state of Arizona; and

F.     For such other relief as this Court may deem just and proper.

Dated June 17, 2021.                    JACKSON LEWIS P.C.

                                        By: /s/ Alejandro Pérez
                                            Greg Coulter
                                            Alejandro Pérez
                                            Attorneys for Plaintiff Mason Stephens

4846-7583-4095, v. 3

13

# EXHIBIT B

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
6/18/2021 8:57:45 AM
Filing ID 13028803

1 Greg Coulter (State Bar No. 016890)
Alejandro Pérez (State Bar No. 030968)
2 **JACKSON LEWIS P.C.**
3 2111 East Highland Avenue, Suite B-250
Phoenix, AZ 85016
4 Telephone: (602) 714-7044
5 Facsimile: (602) 714-7045
Greg.Coulter@jacksonlewis.com
6 Alejandro.Perez@jacksonlewis.com

7
Jeffrey A. Schwartz (*pro hac to be filed*)
8 **JACKSON LEWIS P.C.**
9 171 17th Street, NW
Suite 1200
10 Atlanta, GA 30363
Telephone: (404) 525-8200
11 Facsimile: (602) 714-7045
12 Jeffrey.Schwartz@jacksonlewis.com

13
Audrey Olson Gardner (*pro hac to be filed*)
14 **JACKSON LEWIS P.C.**
15 150 North Michigan Avenue
Chicago, IL 60601
16 Telephone: (312)787-4949
Facsimile: (602) 714-7045
17 Audrey.Gardner@jacksonlewis.com

18 *Attorneys for Plaintiff*

19                    SUPERIOR COURT OF ARIZONA

20                         IN MARICOPA COUNTY

21

22 Mason Stephens,                        Case No.: **CV2021-009842**

23            Plaintiff,              **PLAINTIFF'S APPLICATION FOR
                                       TEMPORARY RESTRAINING
24 vs.                                 ORDER AND ISSUANCE OF AN
                                       ORDER TO SHOW CAUSE AND
25 Serta Simmons Bedding, LLC,          REQUEST FOR EXPEDITED
                                            HEARING**
26            Defendant.

27

28

**PRELIMINARY STATEMENT**

Plaintiff Mason Stephens ("Plaintiff" or "Mr. Stephens") seeks this Court's intervention to prevent Defendant Serta Simmons Bedding, LLC ("SSB") from using him as a tool in its campaign to harm one of its perceived competitors, Purple Innovation, LLC ("Purple").[1]  As a way of background, in recent years SSB's business has slowed and its employees have left for other companies, including Purple.  In a clear effort to stop this from happening, SSB is now seeking to "stick it" to Purple by filing an arbitration and a companion lawsuit in Georgia State Court against Mr. Stephens, Purple's employee.  Indeed, SSB specifically informed Mr. Stephens that it couldn't continue to lose more of its employees to Purple and therefore was going to "make an example" of Mr. Stephens in order to entice current employees to remain loyal to SSB.  (Declaration of Mason Stephens ("Stephens Decl.") at ¶ 1).

Contrary to the allegations in SSB's arbitration demand and motion for temporary restraining order, Mr. Stephens has not engaged in any unlawful conduct.  As detailed below, Mr. Stephens worked for SSB for years.  In 2015, he was offered an entry level management position as a District Sales Manager.  In connection with this specific position, Mr. Stephens signed an employment agreement containing a one-year covenant not to compete, one-year nonsolicitation covenants, and an incorporated arbitration clause. In the middle of February 2020, Mr. Stephens announced he was resigning from SSB and his last day of employment would be February 28, 2020.  SSB management uniformly understood and accepted that February 28th would be his last day, and Mr. Stephens did in fact stop working for SSB on that date.  The following Monday, March 2nd, SSB reached back out to Mr. Stephens to entice him to return to the Company and offered him an upgraded position as Vice President of Sales.  His offer letter expressly stated that Mr. Stephens would need to execute new restrictive covenants in connection with this new position.  Mr.

---

[1] While SSB may perceive Purple as one of its competitors, Purple does not consider SSB one of its competitive rivals in the mattress marketplace.

1    Stephens accepted this position the next day as well as a retention bonus agreement and

2    commenced his re-employment with SSB effective March 3, 2020.

3        The following year, in April 2021, SSB emailed Mr. Stephens and admitted that he

4    no longer had a valid noncompete agreement in effect.  As a result, SSB asked him to sign

5    a new noncompete agreement for his new position, consistent with Mr. Stephens' offer

6    letter.  Mr. Stephens agreed that he was no longer subject to any noncompete agreement

7    but declined to sign a new one.  The following month, in reliance on SSB's direct statement

8    that he had no noncompete agreement on file, Mr. Stephens resigned from his employment

9    with SSB and accepted a position with Purple in May 2021.

10        As discussed below, SSB's contention that Mr. Stephens violated the Agreement

11    and its corresponding restrictive covenants by accepting employment with Purple is

12    meritless.  Not only are the restrictive covenants unenforceable as they are overbroad and

13    unreasonable, they began running on February 28, 2020 at the latest, when he first left his

14    employment with SSB.   Thus, any restrictive period ended on February 28, 2021.

15    Similarly, the arbitration clause in the Agreement solely pertained to his employment as

16    SSB's District Sales Manager, and it expired upon the first termination of his employment.

17    Moreover, the arbitration clause is a mere exhibit to the Agreement and is specifically

18    included therein.  Consequently, if the Agreement lapsed, so did Exhibit A (the arbitration

19    provision).  As a result, there is no enforceable arbitration agreement between the parties,

20    and SSB has improperly instituted arbitration proceedings before the American Arbitration

21    Association.[2] Mr. Stephens therefore respectfully requests that the Court grant this motion

22    for a temporary restraining order and enjoin SSB from its improper conduct.

23

24                              **APPLICATION**

25        Pursuant to A.R.S. §12-1801, and Rule 65 of the Arizona Rules of Civil

26    Procedure, Mr. Stephens moves for a temporary restraining order against SSB enjoining

27    _____

28        [2] A copy of SSB's arbitration demand and motion for temporary restraining order are
attached hereto as Exhibit Q.

and restraining them from directly or indirectly:

- Enforcing the Agreement's restrictive covenants against him.
- Enforcing the Agreement's arbitration clause.
- Proceeding with the Georgia arbitration matter, AAA Case No. 01-21-0004-1465
- Otherwise interfering with his right to work at Purple.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    **STATEMENT OF FACTS.**

### A. **Mr. Stephens Signs the Agreement in Connection with His Position as SSB's District Sales Manager.**

Mr. Stephens first commenced working for Simmons Bedding Company ("Simmons") in 2004 as an Account Coordinator. (Stephens Aff. at ¶ 2). He did not sign a non-compete agreement in connection with that role. (*Id.*) In approximately October 2015, after Simmons merged with Serta to become SSB, SSB offered Mr. Stephens a position as a District Sales Manager and presented him with the Agreement to execute in connection with that position. (*Id.* at ¶ 3).

The language of the Agreement clearly states that it solely applied to Mr. Stephens's role as District Sales Manager. For example, the Agreement's consideration was not continued employment with the Company generally, but rather Mr. Stephens's acceptance of the specific "position of District Sales Manager" and the "future wages and employment benefits, payment of which during the period of your employment is a condition of this Agreement." (Agreement[3], Ex. C, ¶ 1).

Additionally, the Agreement expressly incorporated Mr. Stephens's job title as District Sales Manager (*Id.* at ¶ 2(a)(3)) and stated it was "due to [that] position," that Mr. Stephens could potentially harm the Company. (*Id.* at ¶ 2(d)). The Agreement's non-

---

[3] A copy of the Agreement is attached to the accompanying Declaration of Mason Stephens as <u>Exhibit C</u>.

4

competition provision was also specific to Mr. Stephens's position as District Sales Manager. It provided:

> You covenant and agree that, during the term of your employment with the Company and for a period of twelve (12) months after the termination thereof, regardless of the reason for the employment termination, you will not, directly or indirectly, anywhere in the Territory, on behalf of any Competitive Business **perform the same or substantially similar Job Duties.**

(*Id.* at ¶ 2(h) (emphasis added)).  "Job Duties" is specifically defined by the Agreement to refer solely to Mr. Stephens's responsibilities as a District Sales Manager. (*Id.* at ¶ 2(a)(3); Ex. B).  Similarly, the Agreement's Non-Solicitation of Employees clause also referenced Mr. Stephens's Job Duties as a District Sales Manager:

> You also covenant and agree at during the term of your employment the Company and for twelve (12) months after the termination thereof, regardless of the reason for the employment termination you will not…solicit…any non-clerical employee of the Company with whom you had personal contact or supervised **while performing your Job Duties**, to terminate their employment relationship with the Company.

(*Id.* at ¶2(j)).  The Agreement further contained a Non-Solicitation of Customers, Customer Prospects, and Vendors provision prohibiting Mr. Stephens from soliciting SSB's customers for twelve months following the termination of his employment.  (*Id.* at ¶ 2(i)).  Finally, the Agreement included an arbitration clause whereby the parties agreed that "any controversy or claim…between the Company and [Mr. Stephens] involving the construction or application…of the Agreement…must be submitted to arbitration[.]"  (*Id.*, Ex. A, ¶ 1).  The Agreement specified that the arbitration clause was an "integral part of th[e] Agreement" and that "[t]his Agreement, which includes Exhibits A [the arbitration clause] and B [the District Sales Manager job description] represents the entire understanding between the Company and [Mr. Stephens]."  (*Id.* at ¶¶ 4, 7).

Mr. Stephens signed the Agreement on November 8, 2015 and commenced his position as SSB's District Sales Manager position effective January 1, 2016.  (Stephens Aff. at ¶ 3).  As a District Sales Manager, Mr. Stephens supervised a team of sales employees who managed SSB's relationships with smaller "mom and pop" retailers in Colorado and Arizona, as well as parts of New Mexico, Kansas, Wyoming, South Dakota, and Nebraska.  (*Id.* at ¶ 4).  Mr. Stephens did not supervise relationships or work with retailers in Texas, Oklahoma, or Montana as a District Sales Manager.[4]  (*Id.* at ¶ 4.)

In approximately March 2019, Mr. Stephens was promoted to SSB's Director of Strategic Accounts (West).  (*Id.* at ¶ 5).  In approximately October 2019, Mr. Stephens became SSB's Senior Director of Strategic Accounts (West)  (*Id.*)  Mr. Stephens did not execute new noncompete or arbitration agreements in connection with either of these positions.  (*Id.* at ¶¶ 5-6)

**B. Mr. Stephens Resigns from His Employment with SSB on February 28, 2020.**

On Friday, February 14, 2020, Mr. Stephens informed his supervisor, Scott Moore, Vice President of Sales (West), that he was resigning from SSB and accepting a position with another company, Flexsteel Industries, Inc. ("Flexsteel").  (*Id.* at ¶ 8).  At that time, Flexsteel had extended Mr. Stephens an offer of employment as its Regional Sales Manager, which Mr. Stephens accepted on February 11, 2020.  (*Id.* at ¶ 7).

Shortly thereafter, Mr. Stephens received a phone call from Mitch Willingham, SSB's Senior Vice President of Sales, during which Mr. Willingham inquired as to the reasons why Mr. Stephens was leaving SSB's employ and asked if there was anything the Company could do to entice him to stay.  (*Id.* at ¶ 9).  Mr. Stephens confirmed to Mr. Willingham that he was in fact leaving SSB and his last day was February 28, 2020, but he would consider any offers that Mr. Willingham and the Company wanted to relay.  (*Id.*)

---

[4] As a result, the noncompete is unenforceable as it is overbroad.  The defined territory in the noncompete encompasses various states where Mr. Stephens never worked, including Texas, Oklahoma, and Montana.  (*See* Agreement, Ex. B).

On or about February 17 or 18, 2021, Mr. Willingham telephoned Mr. Stephens and suggested there might be a way to bring him "back" into an elevated role within the Company. (*Id.* at ¶ 10). In response, Mr. Stephens again confirmed that he would consider additional offers of employment from the Company, but his last day was still February 28, 2020. (*Id.*). Later that day, Mr. Moore texted Mr. Stephens and stated, "please communicate with the SAM's you['re] leaving. I'm going to be reaching out, requesting updates and reviewing strategies this week. Don't want it to be awkward. Thanks!" (*Id.* at ¶ 11).

On Monday, February 17, 2021, Mr. Moore emailed Christy Miller, Vice President Human Resources, acknowledging, "Unfortunately, Mason has tendered his resignation with SSB. His last day with the company is 2/28/2020. Mason is exiting the mattress industry, going into the furniture industry. How quickly do you believe we can get the Director of Strategic Accounts West posted?" (*Id.* at ¶ 12, Ex. D). Ms. Miller confirmed that she would post Mr. Stephens's position immediately, stating "Ah – sorry to hear that. Can you look at this role description—any changes? What city or cities do you want it posted for? I'll work to get this posted today[.]" (*Id.*). The following day, Ms. Miller confirmed that SSB was "reach[ing] out to a headhunter for a retained search for this to help expedite [filling Mr. Stephens' position]" and was also "post[ing] the role internally so that internal folks [could] apply[.]" (*Id.*)

Mr. Stephens's decision to resign from his employment with SSB was communicated and well understood throughout the Company, as well as amongst its retailers. Numerous employees reached out to Mr. Stephens to wish him well in his future endeavors. (*Id.* at ¶ 13). For example:

- On February 18, 2020, Matt Jones, former SSB employee, texted Mr. Stephens stating "Just heard, congrats on the new gig. That company [Flexsteel] is changing, you'll do well[.]" (*Id.* at ¶ 13, Ex. G).

7

- On February 20, 2020, Kimberly Kent, Senior Strategic Account Manager, emailed Mr. Stephens stating "I just wanted to say it was really nice working with you, I wish you the BEST of luck in this new chapter!" (*Id.* at ¶ 13, Ex. H).

- On February 21, 2020, SSB employee Nicholas Lucarell texted Mr. Stephens asking "Do [customer contacts] Nick/Larry know about your departure?" (*Id.* at ¶ 13, Ex. I).

- On February 24, 2020, SSB employee Jeffrey Herman texted Mr. Stephens stating, "I'm really happy for you…you did great things here, I value our friendship and wish you the best!!" Mr. Stephens responded accordingly, "Thanks man! Means a lot to me. I place a ton of value in our friendship as well. We will stay in contact." (*Id.* at ¶ 13, Ex. I)

- Doug Applegate, Sales Representative, texted Mr. Stephens on February 28, 2020, stating "Hey – last day – pleasure working with you – will miss ya[.]" (*Id.* at ¶ 13, Ex. J).

On Friday, February 28th, Mr. Stephens finished his last day of employment with SSB. (*Id.* at ¶ 14). At the end of the day, Mr. Willingham called Mr. Stephens and apologized for not being able to arrange a new position for him before his departure and acknowledged that it was Mr. Stephens's last day with the Company. (*Id.* at ¶ 15). However, in an effort to entice Mr. Stephens to become re-employed, Mr. Willingham once again asked Mr. Stephens if he would entertain an offer for another position within the Company. Mr. Stephens again affirmed it was his last day with the Company but he would consider an offer of re-employment moving forward. (*Id.*)

**C. SSB Offers Mr. Stephens Employment as SSB's Vice President of Sales.**

On Monday, March 2, 2020, Mr. Willingham called Mr. Stephens and, while acknowledging that Mr. Stephens had left SSB's employ, stated that he was able to offer Mr. Stephens a position as SSB's Vice President of Sales. (*Id.* at ¶ 16). In response, Mr.

8

Stephens asked Mr. Willingham to place the offer in writing for his review and consideration. (*Id.*).

Later that same day, Ms. Miller emailed Mr. Stephens an offer letter for a position as SSB's Vice President, R&I – West Region ("Vice President of Sales") and a retention bonus agreement. (*Id.* at ¶ 17, Ex. K). The offer letter expressly stated that this "new assignment" was expected to begin on March 2, 2020. (*Id.*) It also stated "this job offer is contingent upon your agreement to covenants required for your position which you will receive in due course." (*Id.*) Notably, this statement confirms by its reference to "your position" that a new non-compete would be required.

The following day, Mr. Stephens signed the offer letter and commenced employment with SSB once again. (*Id.* at ¶ 18). Numerous employees reached out to Mr. Stephens to "welcome him back" after his break in employment. (*Id.* at ¶ 19). For example, Larry Lamar, former Serta employee, texted Mr. Stephens on March 3, 2020 stating "Dude, hanging with Mike and Ryan and just found out you left SSB??? Man SSB is going to miss you! I will too…" Mr. Stephens responded, "Hey Larry, I did leave SSB but they just hired me back to be the VP of Sales in the west." (*Id.* at ¶ 19, Ex. L).

**D. SSB Admits That Mr. Stephens Does Not Have a Valid Noncompete in Effect.**

After working for SSB as the Vice President of Sales for over a year, on April 9, 2021, Mr. Stephens received an email from Amy Doronio, SSB's Senior Litigation Paralegal, stating, "Mason, we are auditing our files and do not have a [noncompete] agreement for your current position." (*Id.* at ¶ 20, Ex. M). Ms. Doronio accordingly sent Mr. Stephens a noncompete agreement for his review and signature, stating, "Please see our standard agreement for your position with SSB. Sign and initial where applicable. Please note that some pages may require more than one initial or require you to sign and initial. Please let me know if you have any questions." (*Id.*) Mr. Stephens did not respond at that time. (*Id.* at ¶ 20).

A month later, on May 5, 2021, Mr. Stephens received a Docusign reminder to sign the outstanding noncompete agreement in connection with his Vice President of Sales position (*Id.* at ¶ 21). A few days later, on May 8, 2021, Mr. Stephens responded to Ms. Doronio and informed her that he would not be signing the noncompete agreement as requested, stating:

> I have thought about your request to sign the non-compete you presented for my new role and it doesn't feel right to me that this is now being presented to me a year after returning to the company for my new VP role. This was never presented to me when the job was offered as a condition for consideration to return to SSB for the role of VP of Sales. I will NOT be signing the non-compete that you have presented.

(*Id.* at ¶ 21, Ex. N). In reliance on SSB's direct representation that he did not have a noncompete agreement in effect, Mr. Stephens interviewed for a position with Purple Innovation, LLC ("Purple") and accepted a position as Purple's Vice President of Sales in May 2021. (*Id.* at ¶ 22).

On May 14, 2021, Mr. Stephens informed Mr. Willingham that he was resigning from his position with SSB effective May 28, 2021 and going to work for a competitor. (*Id.* at ¶ 23). After learning this information, SSB informed Mr. Stephens that he would not be permitted to stay until the 28th[5] and should cease his work immediately, consistent with SSB's standard protocols when employees leave to go to competitors. (*Id.*) Almost a week later, on May 20, 2021, Ms. Miller emailed Mr. Stephens confirming his last day of employment and sending him a document explaining his benefits upon separation. (*Id.* at ¶ 24, Ex. O).

Between May 15, 20201 and May 26, 2021, Mr. Stephens received approximately three phone calls from SSB's Chief Commercial Officer, Melanie Huet, inquiring about Mr. Stephens' new employment. (*Id.* at ¶ 25). During these phone calls, Mr. Stephens disclosed

---

[5] It is only because Mr. Stephens was going to a competitor that Mr. Stephens was not permitted to finish his last two weeks of employment and was quickly shut out of the system.

that he had accepted employment with Purple. (*Id.*) Subsequently, on May 21, 2021, SSB sent Mr. Stephens a letter threatening that he was still subject to the 2015 Agreement and demanding that he confirm his intent not to engage in any conduct which may violate the Agreement. (*Id.* at ¶ 26, Ex. P). At the same time, in a phone call between Mr. Stephens with Ms. Huet, Ms. Huet acknowledged that there were "some grey areas" in the noncompete and it arguably may not be enforceable. (*Id.* at ¶ 27). Ms. Huet also specifically informed Mr. Stephens "we [SSB] can't continue to lose more people, and we [SSB] especially can't continue to lose more people to Purple, so we [SSB] are going to make an example of you and pursue your noncompete." (*Id.*)

SSB proceeded to file a demand for arbitration before the American Arbitration Association and motion for temporary restraining order on or about June 3, 2021, arguing that Mr. Stephens was in violation of the 2015 Agreement through his new employment with Purple. (*See* Exhibit Q). Notably, SSB's arbitration demand and motion do not mention Mr. Stephens's break in employment between February 28, 2020 and March 2, 2020, nor does SSB mention its April 2021 admission to Mr. Stephens that it did not have an effective noncompete on file binding him in connection with his Vice President of Sales position.

## II.   **LEGAL ARGUMENT**

### A.   **Mr. Stephens is Entitled to Injunctive Relief.**

The test under Arizona law for whether a temporary restraining order or preliminary injunction should be issued requires the moving party to establish four equitable criteria. These: (1) the likelihood of plaintiff's success on the merits at trial; (2) the threat of irreparable harm to plaintiff not remediable by damages if the injunction does not issue; (3) the relative balance of harm to the parties favors the plaintiff; and (4) the public interest favors the issuance of the injunction. *Shoen v. Shoen,* 167 Ariz. 58, 63, 804 P.2d 787, 792 (Ct. App. 1990), *Phoenix Orthopaedic Surgeons, Ltd. V. Peairs,* 164 Ariz. 54. 58, 790 P. 2d 752, 756 (Ct. App.1989), *overruled on other grounds by Valley Med. Specialists v. Farber,* 194 Ariz. 363, 982 P.2d 1277 (1999). "The critical element in this analysis is the relative

hardship to the parties. To meet this burden, the moving party may establish either 1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and 'the balance of hardships tip sharply' in the moving Party's favor" *Id.* In the instant case, application of these four equitable criteria clearly weigh strongly in favor of granting a temporary restraining Mr. Stephens' seeks.

## B.   Likelihood of Success On the Merits.

SSB drafted the 2015 Agreement and inextricably bound its terms to a specific District Sales Manager position. As such, Mr. Stephens has a high likelihood of success on the merits regarding both the restrictive covenants and the arbitration clause.

### 1.   As to the Restrictive Covenants

Mr. Stephens requests the Court find he is not bound by the one-year non-competition and non-solicitation provisions in his 2015 Agreement. Arizona law typically disfavors restrictive covenants, and because of that, courts subject them to a high level of scrutiny. *See Valley Med. Spec.v. Farber*, 194 Ariz. 363, 367-68, ¶ 13 982 P.2d 1277, 1281-82 (1999), (citing *Amex Distrib. Co. v. Mascari,* 150 Ariz. 510, 724 P.2d 596 (App. 1986)). Because of this presumption, courts keenly assess restrictive covenant agreements to ensure the restraints (1) do not exceed what is reasonably necessary to protect the employer's business; (2) unreasonably restrict the employee's rights; (3) contradict public policy; and (4) are of a reasonable scope and duration. *See Bed Mart, Inc. v. Kelley*, 202 Ariz. at 372, ¶ 12 (citing *Phoenix Orthopaedic Surgeons, Ltd. v. Peairs*, 164 Ariz. 54, 57 (App. 1989)).

As a preliminary matter, the restrictive covenants as applied to Mr. Stephens's last position with SSB fail. As discussed above, the 2015 Agreement explicitly incorporated the details of the District Sales Manager position and did not include any language providing that the covenants therein would survive should Mr. Stephens's District Sales Manager position terminate in exchange for a new position. As a result, the moment Mr. Stephens was no longer employed by SSB in that capacity – in March 2019 with his promotion to Director of Strategic Accounts – his 12-month non-competition and non-solicitation

12

covenants began to run.

At the latest, the restrictive covenants in the 2015 Agreement began to run upon Mr. Stephens's resignation on February 28, 2020. In the arbitration, SSB now conveniently argues that Mr. Stephens's employment was not considered terminated at that time, the evidence discovered to date demonstrates just the opposite. Specifically, the communications that Mr. Stephens possesses show that SSB agreed that Mr. Stephens had resigned effective February 28, 2020 and SSB engaged in significant efforts to find a replacement for his position. As of the morning of March 2, 2020, Mr. Stephens did not have any commitment to return to SSB. Resultantly, his employment with SSB ended on February 28, 2020, with his restrictive covenants running and then expiring on February 28, 2021. *See Russomano v. Novo Nordisk, Inc.,* 960 F.3d 48 (1st Cir. 2020); *see also Nightingale Home Healthcare Inc. v. Helmuth*, 15 N.E.3d 1080 (Ind. Ct. App. 2014) (restrictive covenants for employee who was terminated and rehired ten days later began running upon the date of his termination, despite his rehire soon thereafter).

The First Circuit's decision in *Russomano v. Novo Nordisk, Inc.* is instructive and directly analogous to the instant dispute. In *Russomano*, the employee, Russomano, was rehired by his employer, Novo Nordisk ("Novo") in December 2016 and signed a non-compete agreement at that time. 960 F.3d at 51. The non-compete provisions applied "during Rossomano's employment and for a period of twelve months following the termination of his employment for any reason, voluntary or involuntary." In June 2018, Novo sent Russomano a letter stating his position was being eliminated effective Friday, August 3, 2018 and encouraged him to apply for other open positions in the company. Russomano did so and received a new position starting on Monday, August 6, 2018. Novo sent Russomano a letter confirming his "transfer" to the new position. Russomano did not sign a new noncompete in connection with the new position. *Id.* at 51-52.

On January 6, 2020, Russomano resigned from his employment with Novo and commenced working for a competitor a few weeks later. Novo subsequently sued

Russomano for breach of contract, unfair competition, and misappropriation of trade secrets, and filed a motion for temporary restraining order and preliminary injunction seeking to enjoin Russomano from violating his noncompete agreement for a one year period, preventing his new employer from employing him in violation of his noncompete agreement, and enjoining Russomano and his new employer from "using, disclosing, or misappropriating," Novo's confidential information.   The district court denied Novo's motion, concluding that his employment subject to the 2016 non-compete agreement had terminated on August 3, 2018.   Thus, with the termination of his former position, the restrictive covenants ran and expired one year later, in August 2019.   *Id.* at 51-53.

Novo appealed and the First Circuit agreed with the decision of the district court, holding that there was a break in employment between Friday, August 3, 2018 and Monday August 6, 2018.  As a result, Russomano's non-compete obligations expired in August 2019. The First Circuit expressly rejected Novo's argument that Russomano had simply transferred to a new position, stating "a passing reference to Russomano's 'transfer' in the letter Novo…sent rehiring him is not enough to undermine its clear references to the 'end' of his employment with the company….and later his 'new position.'" *Id.* at 54-55.

Here too, SSB's arguments that Mr. Stephens had not resigned from his employment on February 28, 2020 are unavailing.  As discussed above, both Mr. Stephens and SSB unequivocally acknowledged that his employment was ending that day.   While Mr. Willingham repeatedly stated that SSB intended to extend another offer of employment to Mr. Stephens in order to entice him to stay with the Company, this offer did not come until Mr. Stephens had already left.  Moreover, to the extent that SSB may argue that as of February 28th, SSB had not formally closed Mr. Stephens out of its system or sent him a formal termination letter, this argument has no merit.  Even if Mr. Stephens had not become reemployed by SSB on March 3, 2020, SSB would not have sent him any formal termination documents until at least a week later.  Indeed, after Mr. Stephens resigned a second time on March 14, 2021, Ms. Williams did not send him documents regarding his separation and pay

14

until May 20, 2021.  Accordingly, SSB's contentions that there was no break in employment are insufficient.  Mr. Stephens's employment with the Company clearly terminated on February 28, 2020, and his twelve-month restrictive covenants ran and expired on February 28, 2021.  He therefore did not violate any portion of the 2015 Agreement by accepting employment with Purple in May 2021.

Finally, the restrictive covenants themselves are unenforceable. First, they are overbroad and ban Mr. Stephens from working within his chosen profession in the states of Arizona, Colorado, Kansas, Montana, Nebraska, New Mexico, Oklahoma, South Dakota, Texas, and Wyoming.  In *Bedsmart*, the court upheld a restrictive covenant prohibiting a former mattress salesman from working for six months "with any business for which the sale of mattresses accounts for more than fifty percent (50%) of sales revenue" within a geographical scope of "10 miles of any location" where the former employer conducted business. *Bedsmart*, 202 Ariz at 364 ¶ 18.  The Court explained the restrictive covenants did not prevent the former employee from working in his chosen employment.  *Id.* As the Court noted, the former employee "could have continued selling mattresses at hundreds of other bedroom, furniture or department stores in the Phoenix area.  *Id.*  He simply could not work at the five or six mattress superstores that are the direct competitors of Bed Mart and located within ten miles of a Bed Mart store." *Id.*

Unlike the reasonable covenants in *Bedsmart*, SSB seeks to prevent Mr. Stephens from working in 10 states; one of which is where he resides. The result is SSB ousts Mr. Stephens from his chosen line of work. *See id. at* ¶ 20 (recognizing non-compete provisions preventing a worker from continuing to engage in his chosen employment is violative of public policy). Mr. Stephens is certain evidence will show this entire fracas was instituted to adversely impact Purple, which is also contrary to Arizona law.  *Id.*at 372, ¶ 12 (restrictive covenants and unreasonable, and thus unenforceable when the company's alleged legitimate business interest is borne from a "mere interest in protecting itself from competition").

## 2.      The Arbitration Clause is Not Enforceable.

Similarly, the Arbitration Clause of the 2015 Agreement did not survive the termination of Mr. Stephens's employment as a District Sales Manager.  "Although it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate."  *See Gullett v. Kindred Nursing Ctrs. W., Ltd. Liab. Co.,* 241 Ariz. 532, 541, 390 P.3d 378, 387 (App. 2017) (citing *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 977 P.2d 769 (1999)).  Thus, at the heart of any arbitration agreement is the parties' consent to be bound by the agreements' terms.

Numerous jurisdictions widely recognize that an arbitration agreement executed during a first period of employment does not govern a second period of employment absent language providing otherwise.  *See, e.g., Varma v. TCC Wireless, LLC,* 478 F.Supp.3d 724, 733 (N.D. Ill. 2020) ("A second employment relationship is not governed by the first employment relationship unless the agreement says so"); *Frank v. 84 Components Co.,* 2002 U.S. Dist. LEXIS 11218 at *9 (S.D. Ind. June 18, 2002) (holding that the employee's arbitration agreement from his first period of employment did not apply to claims arising during his second period of employment when there was no separate arbitration agreement for the employee's second period of employment); *Walker v. Red Lobster Rests, LLC,* Case No. 3:14-cv-449-CWR-FKB, 2015 U.S. Dist. LEXIS 84922 at *7 (S.D. Miss. June 30, 2015) ("without a showing that the arbitration agreement contained terms that expressly provided for a duty to arbitrate even after a break of termination of employment, or without providing an additional agreement to arbitrate upon…subsequent rehire, the arbitration agreement…[could not] be imposed against Walker's claims, as they [were] beyond the scope of the arbitration agreement.")

For example, in *Varma v. TCC Wireless, LLC,* 478 F.Supp. at 726-727, the employee, Varma, was first hired by the employer, TCC Wireless, LLC ("TCC") in May 2016 and executed an employment agreement containing an arbitration clause at that time.

The arbitration clause provided that:

> "[a]ny dispute arising out of or relating in any [way] to Employee's employment with the Company, including but not limited to the interpretation o[r] enforcement o[f] any of the Parties' rights or obligations under this Agreement, other than those seeking equitable relief, shall be resolved in binding arbitration according to the rules of the American Arbitration Association in the State listed in 10(h) above."

*Id.* at 729.

In September 2017, Varma left TCC's employ for other opportunities.  TCC's CEO quickly reached out to Varma and told him that he would be a great fit for a soon opening Director of Operations position.  "The prospect of a promotion…enticed Varma back."  He rejoined the company in a new position in October 2017.  After Varma filed a lawsuit alleging claims stemming from his post-October 2017 employment, TCC moved to compel arbitration.  The court concluded that it was the power of the court, and not the arbitrator to decide whether an arbitration agreement existed requiring Varma and TCC to submit their dispute to arbitration.  *Id.* at 729.  In resolving this inquiry, the court noted:

> When Varma was rehired in October 2017, he did not sign another employment agreement.  He did not sign a standalone arbitration agreement either.  And he did not sign anything saying that the old Employment Agreement sprang back to life.  Instead, Varma only signed an offer letter…which did not contain an arbitration provision.

*Id.* at 730.  As a result, and because there was no "objective evidence that the parties agreed to arbitrate all employment disputes, now and forever, even if the employee left the company and later returned," the court held that the arbitration provision did not govern Varma's second period of employment and denied TCC's motion to compel arbitration.  *Id.* at 735.

By contrast, in *Gillian v. Cowabunga, Inc.,* Case No. 2:17-cv-01389-JEO, 2018 U.S. Dist. LEXIS 89812 (N.D. Ala. May 30, 2018) the court held that a first arbitration agreement did govern later periods of employment where the arbitration agreement

17

expressly stated, "this Agreement…shall survive the termination of Employee's employment, and can only be revoked or modified by a writing signed by all parties which specifically states an intent to revoke or modify this Agreement." *Id.* Indeed, because of this language preserving the arbitration agreement for disputes arising subsequent to the employee's termination, the court held arbitration should be compelled. *See also Nelson v. Carl Black Chevrolet of Nashville, LLC,* No. 3:17-cv-00687, 2017 U.S. Dist. LEXIS 121714 at *5 (M.D. Tenn. Aug. 2, 2017) (arbitration agreement survived and carried over into second period of employment because "[t]he language specifically provide[d] that the Agreement 'survive[d] the termination of employment[.]'"); *Anderson v. Waffle House, Inc.,* 920 F.Supp.2d 685, 693 (E.D. La. 2013) (holding that plaintiff's termination did not extinguish arbitration agreement because the arbitration agreement expressly stated "[t]his Agreement shall survive termination of my employment"); *Burch v. Pj Cheese, Inc.,* 2009 U.S. Dist. LEXIS 139967 at *3-7 (N.D. Ala. Dec. 11, 2009) (holding that arbitration agreement survived employee's first termination because it expressly stated, "[t]his Agreement to arbitrate shall survive the termination of my employment.")

The present case is directly analogous to *Varma v. TCC Wireless* and completely unlike *Gillian v. Cowabunga, Inc.* The 2015 Agreement does not include any language indicating an intent for the arbitration clause to survive the termination of Mr. Stephens' employment. To the contrary, the arbitration clause is expressly integrated into the 2015 Agreement, which was inextricably connected to his position as a District Sales Manager. As a result, the arbitration clause likewise ceased the moment that Mr. Stephens left that role. *See Regions Bank v. Chattanooga-Hamilton Hosp. Auth.,* 2014 U.S. Dist. LEXIS 200549 at *44 (N.D. Ga. Oct. 29, 2014) ("'[w]here instruments are executed at the same time in the course of the same transaction, they should be read and construed together.'"); *Preston Exploration Co., L.P. v. GSF, LLC,* 669 F.3d 518, 524 (5th Cir. 2012) (purchase and sales agreement and attached exhibits were all part of the same transaction and should be construed together… [t]he exhibits were specifically incorporated into the contract");

*Alabama Power Co. v. FERC,* 22 F.3d 270, 271 (11th Cir. 1994) (noting that a contract and its schedules and appendices "comprise[d] a single, integrated agreement"); *Colden v. Asmus,* 322 F.Supp. 1163, 1165 (S.D. Cal. 1971) ("Where a contract incorporates by reference the contents of another writing, the two documents constitute one agreement and should be read together.")

Finally, to the extent SSB asserts the arbitration agreement is severable from his previous employment agreement, it is not. Arizona's separability doctrine only presumes that an arbitration clause is separable from the overall contract where the parties agree to a broad arbitration clause that is not specifically challenged, that provision will apply even if the arbitrator finds that the overall contract is void or voidable. *See Hamblen v. Hatch*, 242 Ariz. 483,  491, 398 P.3d 99 (2017).  This doctrine, however, has no applicability where, as here, the party opposing arbitration establishes that the clause itself is unenforceable. *See Hamblen v. Hatch*, 242 Ariz. 483, ¶ 33 398 P.3d 99, 107 (2017).

As illustrated above, there is no indication the parties intended for the Agreement or any of its corresponding obligations to extend to Mr. Stephens's other roles in the Company. Mr. Stephens never executed a noncompete agreement in connection with any of his other roles, and SSB's pattern and practice is for its noncompete agreements to be position-specific.  At the latest, the arbitration clause expired with the 2015 Agreement on February 28, 2020, when Mr. Stephens terminated his employment with SSB.  Because Mr. Stephens never signed anything extending his prior employment agreement and its integrated arbitration clause and did not execute a new arbitration agreement altogether, the arbitration clause of the 2015 Agreement no longer has effect.  As a result, this matter must be pursued in a court of law.

## C.     The Relative Balance of Harm To The Parties.

Arizona law states that the "critical element in (an analysis of requested injunctive relief) is the relative hardship to the parties. To meet this burden, the moving party may establish either 1) probable success on the merits and the possibility of irreparable injury,

or 2) the presence of serious questions and the 'balance of hardships tip sharply' in its favor" *Shoen* at 792. As demonstrated above, Mr. Stephens is highly likely to succeed on the merits regarding the 2015 Agreement. Moreover, he will suffer irreparable harm if he is unable to make a living and work in his chosen field. Having to engage in arbitration and litigation in Georgia will further cause irreparable harm.

Even though Arizona case law does not require it in order to obtain the relief sought, Mr. Stephens can also establish that the 'balance of the hardships tips sharply' in their favor. *See Id.* The relief sought here is narrow as he only seeks to render the 2015 Agreement unenforceable as to him.

### D.   The Granting of Injunctive Relief Outweighs Denial and Is In the Public Interest.

Arizona public policy favors the issuance of a preliminary injunction rendering the 2015 Agreement and enjoining the arbitration in Georgia. The public policy of this State is served when parties are required to act according to law and do not intrude onto the established rights of others. Here, as demonstrated above, the 2015 Agreement, its restrictive covenants and its arbitartion clause do not apply. Holding otherwise would force an Arizona resident to engage in proceedings across the country based on an invalid contract.

The benefit of awarding injunctive relief to Mr. Stephens far outweighs any detriment to the Defendant. An injunction will promote the public interest in the enforcement of reasonable contracts. *See, e.g. Morgan Stanley DW, Inc. v. Rothe,* 150 F. Supp.2d 67 (D.D.C. 2001) (finding that the issuance of an injunction "serves the public interest in protecting trade secret and other confidential information."). It will further promote the public interest of Arizona's citizens from engaging in costly proceedings in places far away from there they engaged in employment.

Thus, public interest requires that the Court enjoin the arbitration proceedings instituted by SSB.

## III.   **CONCLUSION**

In sum, Mr. Stephens satisfied each and every element required by law for the issuance of a preliminary injunction and that granting injunctive relief outweighs denial and clearly serves the public interest. Accordingly, Mr. Stephens respectfully requests that the Court issue the Temporary Restraining Order, and that it enter the attached Order to Show Cause.

Dated June 17, 2021.                                    JACKSON LEWIS P.C.

By: /s/ Alejandro Pérez
        Greg Coulter
        Alejandro Pérez
        Attorneys for Plaintiff Mason Stephens

4818-7312-3311, v. 2

# EXHIBIT C

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| Mason Stephens, | No. CV2021-009842 |
| Plaintiff, | |
| vs. | **ORDER TO SHOW CAUSE** |
| Serta Simmons Bedding, LLC, | |
| Defendant. | |

The Court having considered Plaintiff Mason Stephens Complaint for Declaratory Action, his Application for Temporary Restraining Order and Request for Expedited Evidentiary Hearing, the Memorandum of Points and Authorities in support thereof, the supporting Declaration of Sandhu and good cause appearing,

**IT IS ORDERED** that the above-named Defendant appear before the Honorable Joseph P. Mikitish, Judge of this Superior Court, Maricopa County, Arizona, on the **28th day of June 2021, at the hour of 11:00 o'clock a.m..,** and show cause, if any, why a temporary restraining order should not be issued, pursuant to Rule 65, Arizona Rules of Civil Procedure against SSB, and all other persons or entities in active concert with them, whether acting individually or through any corporation or entity (including the respective officers, agents, servants, employees and attorneys of each of the foregoing) who have actual notice of the order by personal or otherwise, enjoining and restraining, directly or indirectly, each and all of them from:

- Enforcing the 2015 Agreement's restrictive covenants against Mr. Stephens.
- Enforcing the Agreement's arbitration clause.
- Proceeding with the Georgia arbitration matter, AAA Case No. 01-21-0004-1465.
- Otherwise interfering with his right to work at Purple until this matter is resolved.

7629080v1(66959.24)

**IT IS ORDERED** that a copy of this Order be served upon any known Defendants within this State by personal service, no later that 1200pm on June 25, 2021, known Defendants outside this State by mailing a copy first class U.S. mail or equivalent, postage prepaid, which service shall be deemed complete upon mailing, at least seven business days prior to the hearing, and unknown or other Defendants by publication pursuant to the Arizona Rules of Civil Procedure, such publication to be completed prior to the hearing.

## THIS HEARING WILL BE CONDUCTED USING THE MICROSOFT TEAMS ONLINE/VIDEO PLATFORM

Lawyers and any interested parties shall access the Court hearing using the following link:

Please join my meeting from your computer, tablet or smartphone.

www.tinyurl.com/jbazmc-cvj12

You can also dial in using your phone (audio only)

+1 (917) 781-4590

Phone Conference ID: 508 176 593#

More information regarding Court Connect can be found at:

https://superiorcourt.maricopa.gov/court-connect/

**DONE IN OPEN COURT** this 18th day of June, 2021.

Honorable Joseph P. Mikitish
Maricopa County Superior Court Judge

2

7629080v1(66959.24)

# EXHIBIT D

John J. Balitis - 011801
jbalitis@jsslaw.com
Daniel J. F. Peabody - 034638
dpeabody@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona  85004-2554
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

Attorneys for Defendant Serta Simmons
Bedding, LLC

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Mason Stephens, | No. CV2021-009842 |
| Plaintiff, | **NOTICE OF APPEARANCE** |
| vs. | |
| Serta Simmons Bedding, LLC, | |
| Defendant. | |

PLEASE TAKE NOTICE that Daniel J.F. Peabody of the law firm Jennings, Strouss & Salmon, P.L.C., hereby appear as attorneys of record on behalf of Serta Simmons Bedding, LLC, in the above-captioned matter.

RESPECTFULLY SUBMITTED this 25th day of June, 2021

JENNINGS, STROUSS & SALMON, P.L.C.

By */s/  Daniel J.F. Peabody*
John J. Balitis
Daniel J.F. Peabody
One East Washington Street, Suite 1900
Phoenix, Arizona  85004-2554
*Attorneys for Defendant*

Original of the foregoing E-Filed with the
Clerk of the Court and a Copy of the
foregoing sent via Electronic mail on this
25th day of June, 2021, to:

*Greg Coulter (State Bar No. 016890)*
*Alejandro Perez (State Bar No. 030968)*
*JACKSON LEWIS P.C.*
*2111 East Highland Avenue, Suite B-250*
*Phoenix, AZ 85016*
*Telephone: (602) 714-7044*
*Facsimile: (602) 714-7045*
*Greg.Coulterajacksonlewis.com*
*Alejandro.PereZ@jacksonlewis.com*

*Jeffrey A. Schwartz (pro hac to be filed)*
*JACKSON LEWIS P.C.*
*171 17th Street, NW*
*Suite 1200*
*Atlanta, GA 30363*
*Telephone: (404) 525-8200*
*Facsimile: (602) 714-7045*
*Jeffrey.Schwartz@jacksonlewis.com*

*Audrey Olson Gardner (pro hac to be filed)*
*JACKSON LEWIS P.C.*
*150 North Michigan Avenue*
*Chicago, IL 60601*
*Telephone: (312)787-4949*
*Facsimile: (602) 714-7045*
*Audrey.Gardner@jacksonlewis.com*

*Attorneys for Plaintiff*


*/s/  Tana Davis-Digeno*

2

7741689v1(88888.932)

**Davis-Digeno, Tana L.**

| | |
|---|---|
| **From:** | TurboCourt Customer Service <CustomerService@TurboCourt.com> |
| **Sent:** | Friday, June 25, 2021 3:59 PM |
| **To:** | Davis-Digeno, Tana L.; Caufman, Valerie J. |
| **Subject:** | AZTurboCourt E-Filing Courtesy Notification |

**This message originated from outside of Jennings Strouss. Do not reply, click on any links or open any attachments unless you trust the sender and know the content is safe.**

PLEASE DO NOT REPLY TO THIS EMAIL.

A party in this case requested that you receive an AZTurboCourt Courtesy Notification.

AZTurboCourt Form Set #5838597 has been DELIVERED to Maricopa County.

You will be notified when these documents have been processed by the court.

Here are the filing details:
Case Number: CV2021009842 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Stephens Vs. Serta Simmons Bedding L L C
Filed By: Daniel J Peabody
AZTurboCourt Form Set: #5838597
Keyword/Matter #: 88888-932 (tdd) (Serta)
Delivery Date and Time: Jun 25, 2021 3:58 PM MST
Forms:


Attached Documents:
Notice of Appearance: Notice of Appearance

# EXHIBIT E

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
6/18/2021 8:57:45 AM
Filing ID 13028804

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

**Plaintiff's Attorneys:**

Alejandro Perez - Primary Attorney
Bar Number: 030968, issuing State: AZ
Law Firm: Jackson Lewis P.C.
2111 E. Highland Avenue Suite B 250
Phoenix, AZ 85016
Telephone Number: (602)714-7028
Email address: alejandro.perez@jacksonlewis.com

Greg Coulter
Bar Number: 016890, issuing State: AZ
Law Firm: Jackson Lewis P.C.
Telephone Number: (602)714-7044

**Plaintiff:**

Mason Stephens
2111 E. Highland Avenue Suite B 250
Phoenix, AZ 85016

**Defendant:**

Serta Simmons Bedding, LLC
N CENTRAL AVE STE 460
Phoenix, AZ 85012

Discovery Tier t3

Case Category: Contracts
Case Subcategory: Other Contract (Breach of Contract)

Emergency Type: Temporary Restraining Order

Commercial Court: Yes

CV2021-009842

# EXHIBIT F

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
6/18/2021 8:57:45 AM
Filing ID 13028805

Person/Attorney Filing: Alejandro Perez
Mailing Address: 2111 E. Highland Avenue Suite B 250
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)714-7028
E-Mail Address: alejandro.perez@jacksonlewis.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 030968, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

Mason Stephens
Plaintiff(s),
v.
Serta Simmons Bedding, LLC
Defendant(s).

Case No.  CV2021-009842

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Alejandro Perez /s/
Plaintiff/Attorney for Plaintiff

# EXHIBIT G

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
6/18/2021 8:57:45 AM
Filing ID 13028806

Person/Attorney Filing: Alejandro Perez
Mailing Address: 2111 E. Highland Avenue Suite B 250
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)714-7028
E-Mail Address: alejandro.perez@jacksonlewis.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 030968, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Mason Stephens
Plaintiff(s),
v.
Serta Simmons Bedding, LLC
Defendant(s).

Case No.  **CV2021-009842**

**SUMMONS**

To: Serta Simmons Bedding, LLC

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson,</u> <u>Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's</u> <u>approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u> Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *June 18, 2021*

*JEFF FINE*
Clerk of Superior Court

By: *YVETTE MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

CLERK OF THE SUPERIOR COURT
FILED

*June 1?, 2021 3:??p.m.*
E. Wolf, Deputy

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Mason Stephens, | No. CV2021-009842 |
| Plaintiff, | |
| | **ORDER TO SHOW CAUSE** |
| vs. | |
| | |
| Serta Simmons Bedding, LLC, | |
| Defendant. | |

The Court having considered Plaintiff Mason Stephens Complaint for Declaratory Action, his Application for Temporary Restraining Order and Request for Expedited Evidentiary Hearing, the Memorandum of Points and Authorities in support thereof, the supporting Declaration of Sandhu and good cause appearing,

**IT IS ORDERED** that the above-named Defendant appear before the Honorable Joseph P. Mikitish, Judge of this Superior Court, Maricopa County, Arizona, on the **28th day of June 2021, at the hour of 11:00 o'clock a.m..,** and show cause, if any, why a temporary restraining order should not be issued, pursuant to Rule 65, Arizona Rules of Civil Procedure against SSB, and all other persons or entities in active concert with them, whether acting individually or through any corporation or entity (including the respective officers, agents, servants, employees and attorneys of each of the foregoing) who have actual notice of the order by personal or otherwise, enjoining and restraining, directly or indirectly, each and all of them from:

- Enforcing the 2015 Agreement's restrictive covenants against Mr. Stephens.
- Enforcing the Agreement's arbitration clause.
- Proceeding with the Georgia arbitration matter, AAA Case No. 01-21-0004-1465.
- Otherwise interfering with his right to work at Purple until this matter is resolved.

7629080v1(66959.24)

1    **IT IS ORDERED** that a copy of this Order be served upon any known Defendants

2    within this State by personal service, no later that 1200pm on June 25, 2021, known

3    Defendants outside this State by mailing a copy first class U.S. mail or equivalent, postage

4    prepaid, which service shall be deemed complete upon mailing, at least seven business

5    days prior to the hearing, and unknown or other Defendants by publication pursuant to the

6    Arizona Rules of Civil Procedure, such publication to be completed prior to the hearing.

7              **THIS HEARING WILL BE CONDUCTED USING THE MICROSOFT**

8                      **TEAMS ONLINE/VIDEO PLATFORM**

9          Lawyers and any interested parties shall access the Court hearing using the

10   following link:

11              Please join my meeting from your computer, tablet or smartphone.

12                      www.tinyurl.com/jbazmc-cvj12

13              You can also dial in using your phone (audio only)

14                      +1 (917) 781-4590

15              Phone Conference ID: 508 176 593#

16              More information regarding Court Connect can be found at:

17              https://superiorcourt.maricopa.gov/court-connect/

18

19   **DONE IN OPEN COURT** this 18th day of June, 2021.

20

21                      Honorable Joseph P. Mikitish
                        Maricopa County Superior Court Judge
22

23

24

25

26

27

28

                                    2

                                                            7629080v1(66959.24)

# EXHIBIT H



Select Language
**Powered by** Google **Translate**

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2021-009842 | Judge: | Mikitish, Joseph |
| File Date: | 6/18/2021 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Mason Stephens | Plaintiff | Male | Alejandro Perez |
| Serta Simmons Bedding L L C | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 6/18/2021 | COM - Complaint | 6/18/2021 | |

**NOTE:** Compalint

| | | | |
|---|---|---|---|
| 6/18/2021 | APL - Application | 6/18/2021 | |

**NOTE:** PLAINTIFFS Application FOR TEMPORARY RESTRAINING ORDER AND ISSUANCE OF AN ORDER TO SHOW CAUSE AND REQUEST FOR EXPEDITED HEARING

| | | | |
|---|---|---|---|
| 6/18/2021 | CSH - Coversheet | 6/18/2021 | |

**NOTE:** Civil Cover Sheet

| | | | |
|---|---|---|---|
| 6/18/2021 | CCN - Cert Arbitration - Not Subject | 6/18/2021 | |

**NOTE:** Certificate Of Compulsory Arbitration

| | | | |
|---|---|---|---|
| 6/18/2021 | SUM - Summons | 6/18/2021 | |

**NOTE:** Summons

| | | | |
|---|---|---|---|
| 6/18/2021 | OSC - Order To Show Cause | 6/23/2021 | |

## Case Calendar

| Date | Time | Event |
|---|---|---|
| 6/28/2021 | 11:00 | Order To Show Cause |

## Judgments

**There are no judgments on file**

# EXHIBIT J

John J. Balitis - 011801
jbalitis@jsslaw.com
Daniel J. F. Peabody - 034638
dpeabody@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

Attorneys for Defendant Serta Simmons
Bedding, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mason Stephens, | No. |
| Plaintiff, | |
| vs. | **VERIFICATION OF STATE COURT RECORD** |
| Serta Simmons Bedding, LLC, | |
| Defendant. | |

## VERIFICATION OF LINDSAY G. LEAVITT

1.    Daniel J.F. Peabody, having been duly sworn upon my oath, declare and state, under penalty of perjury, as follows:

2.    I am an Associate at the law firm of Jennings, Strouss & Salmon, PLC, and represent Defendant Serta Simmons Bedding, LLC.

3.    On June 18, 2021, Plaintiff Mason Stephens filed the above-captioned case in the Maricopa County Superior Court of the State of Arizona, Case No. CV2021-009842. ("State Court Action").

4.    True and correct copies of all pleadings and other documents filed in the State Court Action are attached to the Notice of Removal as **Exhibits A-I**.

5.    A true and correct copy of the Notice of Removal has been sent to the

7741984v1(88888.932)

clerk of the court in the State Court Action, and written notice has been sent to the Plaintiff, at the same time that the Notice of Removal is being filed in this Court.

I verify under penalty of perjury that the foregoing is true and correct.

DATED this 25th day of June, 2021.

Daniel J.F. Peabody

2

7741984v1(88888.932)

# EXHIBIT K

John J. Balitis - 011801
jbalitis@jsslaw.com
Daniel J. F. Peabody - 034638
dpeabody@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona  85004-2554
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

Attorneys for Defendant Serta Simmons
Bedding, LLC

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| Mason Stephens, | No. CV2021-009842 |
| Plaintiff, | **DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT** |
| vs. | |
| Serta Simmons Bedding, LLC, | |
| Defendant. | |

**TO:  CLERK OF THE SUPERIOR COURT AND ALL PARTIES TO THIS ACTION**

Please take notice that on June 25, 2021, Defendant Serta Simmons Bedding, LLC e filed in the United States District Court for the District of Arizona a Notice of Removal to remove this action to that court.  A full and true copy of said Notice of Removal is herewith served on you for filing attached as **Exhibit "A"**.

RESPECTFULLY SUBMITTED this 25th day of June, 2021.

JENNINGS, STROUSS & SALMON, P.L.C.

By */s/  Daniel J.F. Peabody*
John J. Balitis
Daniel J.F. Peabody
One East Washington Street, Suite 1900
Phoenix, Arizona  85004-2554
*Attorneys for Defendant*

7741690v1(88888.932)

Original of the foregoing E-Filed with
the Clerk of the Court and a Copy of the
foregoing sent via Electronic mail on this
25th day of June, 2021, to:

Greg Coulter (State Bar No. 016890)
Alejandro Perez (State Bar No. 030968)
JACKSON LEWIS P.C.
2111 East Highland Avenue, Suite B-250
Phoenix, AZ 85016
Telephone: (602) 714-7044
Facsimile: (602) 714-7045
Greg.Coulterajacksonlewis.com
Alejandro.PereZ@jacksonlewis.com

Jeffrey A. Schwartz *(pro hac to be filed)*
JACKSON LEWIS P.C.
171 17th Street, NW
Suite 1200
Atlanta, GA 30363
Telephone: (404) 525-8200
Facsimile: (602) 714-7045
Jeffrey.Schwartz@jacksonlewis.com

Audrey Olson Gardner *(pro hac to be filed)*
JACKSON LEWIS P.C.
150 North Michigan Avenue
Chicago, IL 60601
Telephone: (312)787-4949
Facsimile: (602) 714-7045
Audrey.Gardner@jacksonlewis.com

*Attorneys for Plaintiff*

*/s/  Tana Davis-Digeno*

2

7741690v1(88888.932)

# EXHIBIT L

1
2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

3
4
5
6
7
8
9
10
11

| | |
|---|---|
| Mason Stephens, | Case No. |
| Plaintiff, | [Removal from Superior Court of Maricopa County] |
| vs. | **DECLARATION OF MELANIE HUET IN SUPPORT OF DEFENDANT SERTA SIMMONS BEDDING, LLC'S REMOVAL FROM THE SUPERIOR COURT OF MARICOPA COUNTY, ARIZONA** |
| Serta Simmons Bedding, LLC; | |
| Defendants. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1     **DECLARATION OF MELANIE HUET**

2     I, Melanie Huet, declare as follows:

3     1.     I have personal knowledge of the facts set forth in this Declaration, which
4     are known by me to be true and correct, and if called as a witness, I could and would
5     competently testify to the following facts.  I am over 18 years of age and competent to
6     provide this Declaration.

7     2.     I am currently employed as a senior executive of Serta Simmons Bedding,
8     LLC ("SSB"), which is located at 2451 Industry Avenue, Doraville, GA, 30360.

9     3.     At the time Mason Stephens ("Stephens") filed this action against SSB and
10    at the time SSB's Notice of Removal was filed, SSB was and is a corporation formed
11    and existing under the laws of the State of Delaware.

12    4.     At the time this action was filed and at the time SSB's Notice of Removal
13    was filed, SSB's principal place of business was and is in or around Atlanta, Georgia
14    (specifically in Doraville, Georgia, the "Company Headquarters").   The business
15    activities of SSB, including material business decisions affecting the entire company, the
16    creation of personnel policies, financial information systems, and information
17    technology systems, are directed, controlled, and coordinated through the personnel who
18    work at the Company Headquarters in Georgia.

19    5.     During his employment with SSB, Plaintiff Mason Stephens ("Stephens")
20    worked as a sales executive within SSB's Regional and Independent sales channel.  The
21    sales channel which Plaintiff managed is especially relationship-driven, as these
22    customers are uniquely reliant on their manufacturing partners like SSB to assist them in
23    identifying product lines that best fit their business and in marketing and selling those
24    products to end-users.

25    6.     Stephens was among SSB's top executives and employees in targeting and
26    maintaining regional and independent customers.

27    7.     Stephens was responsible for generating approximately $120 million in

28

1   gross sales revenue for SSB in 2020 and approximately $150 million in revenue in 2019.

2        8.     The revenue Stephens generated in 2019 and 2020 represented an average

3   of roughly 30% of SSB's overall revenue in the Regional and Independent sales channel.

4        9.     The net profit produced by Stephens' sales revenue substantially exceeded

5   $75,000 in each of the previous two fiscal years.

6        10.     Stephens resigned his employment with SSB effective May 14, 2021. I am

7   informed and believe that Stephens has since begun employment as a sales executive

8   with Purple Innovation, LLC ("Purple"), a direct competitor of SSB. I am further

9   informed and believe that Stephens' role with Purple would cause him to be in direct

10  violation of his Confidentiality, Non-Competition, and Non-Solicitation Agreement (the

11  "Agreement").

12       11.     On June 3, 2021, SSB filed an arbitration action to enforce a

13  Confidentiality, Non-Competition, and Non-Solicitation Agreement (the "Agreement").

14  The purpose of the arbitration action is to prevent Plaintiff, on behalf of Purple, from

15  unfairly competing against SSB in the bedding industry in breach of his Agreement and

16  through misappropriation of SSB's confidential and proprietary information.

17       12.     If Plaintiff is allowed to compete against SSB on behalf of its direct

18  competitor (*i.e.*, if Plaintiff is allowed to violate or ignore the restrictions in his

19  Confidentiality, Non-Competition, and Non-Solicitation Agreement), SSB could suffer

20  millions in lost revenue as a result of Plaintiff's actions. To be sure, no amount of money

21  could make SSB whole in the event of Plaintiff's violation of his restrictive covenants as

22  set forth in the Agreement. However, while SSB's total damages in the event Plaintiff

23  violates his Agreement are unquantifiable and the harm to SSB would be irreparable, it

24  is easy to see that, in addition to unquantifiable and irreparable non-monetary losses,

25  Plaintiff's actions in violating his restrictive covenants also expose SSB to risk of actual

26  losses in revenue and profits far in excess of $75,000.

27

28

1

2          I declare under penalty of perjury under the laws of the United States of America

3    and all applicable state law that the foregoing is true and correct.

4

5          EXECUTED this 25th day of June 2021, in Atlanta, Georgia.

6                                                    Melanie Huet

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28